CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
RAUL AYALA (Bar No. 102441)
(E-Mail: Raul_Ayala@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-7331
Facsimile: (213) 894-0081

Attorneys for Defendant
JOSE LUIS RIVERA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | No. CR 20-412-PSG-1 |
|---|---|
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM RE: VIOLATION OF SUPERVISED RELEASE** |
| v. | |
| JOSE LUIS RIVERA, | |
| Defendant. | Hearing Date: October 29, 2021<br>Hearing Time: 10:30 AM |

Defendant, Jose Luis Rivera, by and through his counsel of record, Deputy Federal Public Defender Raul Ayala, hereby files this memorandum setting forth his position regarding sentencing on the violation of the terms and conditions of his supervised release.

                                                 Respectfully submitted,

                                                 CUAUHTEMOC ORTEGA
                                                 Federal Public Defender

DATED: October 29, 2021       By   /s/ Raul Ayala
                                                 RAUL AYALA
                                                 Deputy Federal Public Defender

# I.

# INTRODUCTION

*You are not ready (for change), until you are ready.*

Mr. Rivera, a young man with a long history of substance abuse[1], is a living example of this statement. He has had recurring problems with drugs and alcohol, and there have been a few attempts at treatment. Nonetheless, despite his best intentions to receive the help that he clearly needs, once he relapsed while on release, he was on yet "another run."

The Court gave Mr. Rivera an opportunity to obtain support and treatment when he was released in March, 2021 by referring him to the STAR Program. He did, in fact, attend a couple of in-person and virtual sessions and was responding as requested. However, when faced with an old associate who provided him with the drug of his choice -- methamphetamine -- his will power alone was insufficient to "just say no." Once he relapsed and could not stop, he reacted out of fear of returning to jail, and left the area to live and work with his father in Kings County, California.

Mr. Rivera does not want to continue down the same path that he's been on for over half of his young life: uncontrolled use of alcohol and drugs, developing poor associations, and lack of a productive life-style. While he does not have much of a criminal history[2], due primarily to the type and weight of the controlled substance involved, he was sentenced to 121 months in 2011 at the age of 20. He was ultimately released in mid-2020, but continues to struggle with drugs and poor decision making. Upon reflection and some clarity of mind while in custody, he is asking the Court to send him to treatment and to impose modified terms and conditions of his supervision.

---

[1] See, e.g., ¶¶ 61 through 71 of the original Presentence Investigation Report (PSR) filed on December 19, 2011 (Doc. 115) in the District of Nebraska case number CR 11-127-LSC-TDT.

[2] Mr. Rivera has only *two* criminal history points for a 2006 criminal mischief conviction at the age of 15.

## II.

## ARGUMENT

### A. THE UNDERLYING VIOLATIONS REMAIN THE PRODUCT OF UNTREATED DRUG ADDICTION AND MENTAL HEALTH ISSUES.

To his credit, other than use and possession of his drug of choice, Mr. Rivera was not engaged in any other criminal offense. In fact, he was working in his father's dirt hauling business as a subcontractor for the California High Speed Rail Project, and he productive and useful. He was away from his old friends and neighborhood contacts, but he could not leave his addiction behind. His inability to stop using meth or regain a clear mind, and further debilitated by his personal fears and immaturity, effectively kept him from addressing his responsibilities to himself and to this Court.

In addition, Mr. Rivera often ruminated about his lost ten years, and how difficult it was to adjust and survive a 120 month sentence for his first serious offense[3]. He was not ready for the RDAP program, received little by way of treatment or support, and was released into the community with more deficits than when he entered. It is no wonder why he reported feeling overwhelmed when he was released earlier this year, despite everyone's intentions of trying to help him help himself. This reluctance toward self-help measures may also reflect unresolve trauma that he has suffered in the past[4], something that he also wants to explore while in recovery and thereafter.

He states that he's "had enough" and doesn't want to find himself in and out of custody for the rest of his life -- in his own words, he is finally "ready for a real change."

---

[3] A review of the underlying offense and court records, it appears that Mr. Rivera, along with other older co-defendants, was engaged in a conspiracy to distribute 228.59 *grams* of methamphetamine (see, e.g., ¶ 24 of the PSR).

[4] While not reporting any direct abuse, he was separate from his parents when they divorced, had limited contact with his father at that time while he lived in Mexico, and was removed from his mother's home and placed in a Youth Rehabilitation and Treatment Center when he lived in Nebraska.

### B. WHAT CAN WE EXPECT FROM MR. RIVERA GOING FORWARD?

Mr. Rivera is requesting the opportunity to complete a residential drug treatment program upon his release from custody. Thereafter, he would like to explore the possibility of seeking employment again with his father, if conditions are conducive for his sobriety. Upon release from custody and residential drug treatment, he would also like to engage in on-going mental health therapy. Indeed, we are in agreement with the United States Probation and Pretrial Services Office[5] that he needs treatment and counseling and that some form of electronic monitoring is appropriate.

In sum, his release planning may include the following:

1. Enroll in a residential drug treatment program for as long as MediCal and/or the United States Probation and Pretrial Services office may provide. Of particular interest to him is Impact House, given their rigorous structure and proven track record.

2. Upon completion of residential treatment, enroll in outpatient follow-up care and/or a sober living environment as may be approved by his probation officer. If and when appropriate, he would like to explore the possibility of returning to work with his father in the San Joaquin Valley.

3. Seek and maintain mental health counselling, including a referral to a psychiatrist for an evaluation and medication prescription, if appropriate.

4. Regularly attend Twelve Step fellowship program meetings (NA, AA and/or others), obtain a sponsor and establish "sober relationships" with others for support.

5. Seek and maintain regular employment, and abide by all other terms and conditions of any new term of supervised release.

---

[5] In the Supplemental Report dated September 16, 2021, the probation officer recommends outpatient treatment in addition to four months of home detention which may include electronic monitoring (see, page 7).

# III.
# CONCLUSION

For the reasons stated above, Mr. Rivera, by and through his counsel of record, respectfully requests that this Court fashion a disposition that includes no more than the current term of custody and an immediate referral to the treatment for his substance use disorder and other mental health issues.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 29, 2021        By   /s/ Raul Ayala
RAUL AYALA
Deputy Federal Public Defender

5